ORDER
RALPH F. KEEN, Justice.
Nick Lay (“Lay”) has sought, and been refused by the Cherokee Nation Election Service Office (“Service”), a copy of the list of Cherokee voters who actually voted in me 1995 general election. Lay brings this Declaratory Relief action seeking an Order from the Court declaring that he and all other candidates for Cherokee public office be permitted to obtain a list of those who actually voted in the 1995 general election, if they so wish.
Numerous parties were named as Defendants in this action. By stipulation of the parties, dated and approved by the Court on November 24th, 1998, the Cherokee Nation was substituted as the only Defendant.[1] In this case, from this point forward, the Cherokee Nation will be referred to as Defendant.
A recitation of the rest of the procedural history of this case is unnecessary.
All parties agree that the issues before the Court concern only an interpretation of the law of the Cherokee Nation. Therefore, by concurrence of the parties, the matter has been submitted to the Court for a decision on the pleadings, briefs and associated documents.
ISSUES
The issue in the lawsuit is as follows. Can any registered member of the Cherokee Nation obtain a listing of registered *31 Cherokee voters who voted in prior elections?
FACTS
Legislative Act No. 7-97 (codified as 26 CNCA Section One et seq.) [the “Act”] was enacted by the Council of the Cherokee Nation [“Council”] and made effective on May 12th, 1997. The Act revised and superseded, in its entirety, the previously existing election code for the Cherokee Nation.[2]
The Act which created the Service[3] also created a body called the Cherokee Nation Election Commission[4] [“Commission”] and it charged it, respectively, with specified duties and responsibilities.
Among the duties mandated by the Act, to be performed by Sendee, is the establishment and maintenance of a data base from which two lists called (1) the Qualified Voter list, and (2) the Inactive Voter list, are to be established and maintained.[5]
Each of the above-mentioned lists are to contain the following information: name, last known address, date of birth, social security number or other identifying number, date of membership enrollment, dates of voter registration and re-registration, voting district and precinct and any other information deemed relevant by the Election Services Office.[6] As discussed below, the name, last known address, voting district and precinct of voters is available to registered members of the Cherokee Nation, but the remainder of the personal information maintained on the list, such as social security numbers, is not,[7] and must not be released.
Section 24 of the Act provides, in part, A registered voter who fails to vote in any two consecutive special, general or runoff elections occurring on or after January 1, 1995 shall be deemed an. “Inactive Voter”. The Election Service shall remove such persons from the Qualified Voter List.[8] It is obvious from the foregoing that the Code already requires the Service to gather, maintain, process and use information (which Lay is seeking in this lawsuit) in the successful completion of its duties. *32 Therefore, if the Service performs its duties as required by law under Section 24 of the Act, and the assumption is made that it is so doing, then the information Lay seeks already exists and should not need to be constructed from raw data.
Lay seeks a list of voters who actually voted in the 1995 general election. Section 25 of the Act (26 CNCA Section 25)[9] provides a procedure for candidates, and any registered member of the Cherokee Nation, to purchase Qualified Voters Lists.[10] *33 There is no express provision in the Act which allows, or prohibits, the release of the list Lay seeks.
Lay argues that the Principal Chief and perhaps others have obtained lists of those who actually voted in the 1995 election, both within and without his district. The Defendant has simply ignored Lay’s allegation, neither denying nor admitting it.
Lay’s allegation raises the issue of whether the Principal Chief, or others, is receiving, or has received, favored treatment. If it were proven that this had, or was occurring, then even under Defendant’s analysis of the law, such conduct would be outside me law.
As will be seen later in this Order, whether or not the Principal Chief has, or others have, access to the information which Lay seeks, but which has been denied to him, becomes moot.
Lay cites Oklahoma statutory law, and practice, in support of his position. Specifically, Lay cites 26 Okl. St. § 7-103.2: County election boards shall, maintain a current list of all voters in each precinct, which mil, reflect the address and party affiliation of each voter. Said list shall be public information [emphasis added,]
The Oklahoma statute cited by Lay makes no express provision for the maintenance nor release of a list of voters who actually voted in a particular election, or any election. Nevertheless, Lay asserts “it is the practice in the State of Oklahoma that all county election boards maintain not only lists of qualified voters hut they also maintain or can produce voter history lists which, can be obtained by the public which discloses names and addresses of those people who actúa,lly voted in any given election. This applies to state and national elections alike.”
The Defendant acknowledges the Oklahoma statute by simply saying it supports the idea that Oklahoma law, like Cherokee law, does not provide for a list of voters who voted. The Defendant does not address Oklahoma practice.
Basically, the Defendant’s position is that Oklahoma has its election laws, the Cherokee Nation has its election laws, comparison of the two is irrelevant, and Oklahoma law does not create a duty upon the Defendant. The Defendant is correct that the Cherokee Nation has its own election laws and Oklahoma’s election laws create no duty upon the Cherokee Nation. However, looking to other jurisdictions for guidance regarding the implementation of similar laws is a valid procedure for the Court to follow.
The Defendant asserts that the Council could have provided for voters-who-voted lists when they passed the Act, but they did not. Therefore, Defendant says that *34 because the Council did not say one can obtain the information Lay seeks, it cannot be obtained.
The Defendant also asserts in its brief, in reason to obtaining voter lists, that Lay won’t pay the Act’s fee for a list and he won’t do the work himself; the record does not support this assertion by the Defendant. Defendant cites a letter written by Lay stating that “I WILL PAY FOR PAPER COST ONLY” as evidence of him wanting the Cherokee Nation to bear the fee for the list provided for in the Act. Quoting the letter is a “cheap shot” by the Defendant and totally misleading. At the time the letter was written, the current Act which allows for purchase of a voter list, did not even exist. Moreover, Lay’s complaint concerns obtaining a list of voters who actually voted in the last election, which has been denied his, and not with obtaining the Qualified Voter List. The Defendant says that Lay can use scanners and computers, brought to the Service’s offices, to obtain voter lists and avoid a fee, but no number of scanners or computers will help when the information he seeks is not made accessible to him.
ANALYSIS OF CHEROKEE LAW
As stated above, the Service is already required by Section 24 of the Act to gather, process, use and maintain the information Lay seeks.
The Defendant argues that Lay was a member of the Council when the Act was passed, and Lay should not be able to override the will of the Council by claiming something he does not like, and voted against,[11] is unconstitutional. In essence, what the Defendant asks the Court to find is that the Council spoke by silence when it decided to enact certain legislation, and by its silence said “Lay cannot have the information he seeks.”
The maintenance of a republic form of government chosen by the people of the Cherokee Nation required the free and open elections of the representatives of the people. Free and open elections require that a “level playing field” be maintained between the candidates for office relating to voter information maintained by the government. If there is a perception, be it true or not, that incumbent candidates, or candidates who have incumbent friends and/or other insider-friends, have an unfair advantage over other challengers, because one candidate has access to government information which is denied to the other challengers, then the people’s faith in the election process suffers, and deep cynicism grows causing apathy to take root and spread. Apathy is the enemy of any democratic, representative republic form of government. For the Cherokee people to flourish it is useful, if not necessary, that they have faith in their government.
The election laws of the State of Oklahoma are similar to the Cherokee Nation in that both are silent as to whether a citizen may obtain a list of voters who voted in prior federal, state and local elections. The policy in Oklahoma is to allow its citizens to obtain the information, notwithstanding the absence of a specific statute permitting it, and Oklahoma has not suffered as a result.
The Defendant says that the method that Oklahoma has chosen to implement its election laws is irrelevant to the Cherokee Nation. The Court disagrees. A wise person can often learn from observing his *35 or her neighbors by seeing the neighbor’s successes and failures and what caused them. Oklahoma has chosen the path of openness, where the argument of advantage by way of insider information may be diminished. Openness in government is conducive to the form of government chosen by the Cherokee people.
In earlier pleadings the Defendant slated that it could take no action not specified by the Act, and therefore could not furnish Lay with the information he seeks. The Court takes Judicial notice that the Commission has, property, hired an attorney to defend it in the case of Franklin McLain v. Cherokee Nation Election Commission, Case No. JAT-98-13-K. Section 1 1(D)(3) of the Act[12] lists as one of the duties of the Commission as being to Hire independent legal counsel during the general election year,[13] ivho shall not be employed in any other manner by the Cherokee Nation or any agency or en terprise of the Cherokee Nation.
Section 11(D)(3) does not prohibit the Commission from hiring an attorney in non-general election years. Section 11(A) of the Act[14] states in part that the Commission shall be an independent commission in the performance of its statutory authority and in the performance of such authority shall not be subject to direction or supervision by the Executive Office or the Cherokee Nation Council, Clearly it would be simply ludicrous should anyone suggest that the Commission, an independent governmental body, could not hire a lawyer to defend it in a lawsuit, because the lawsuit was not brought during an election year.
This Court takes notice of the fact that the Office of Law and Justice is providing legal representation in this case for the Service, and has also provided legal advice and representation to the Commission. Both the Sendee and the Commission are independent entities. Inasmuch as the Office of Law and Justice is a component of the executive branch of government, an inherent, ethical conflict of interest exists with the Office of Law and Justice providing advice to, representation for, or assistance of any type, to independent entities such as the Service or the Commission. Therefore, from the date of this Order forward, the Office of Law and Justice shall not, and cannot, directly or indirectly, provide legal assistance to the Service and/or the Commission. Those entities must retain and use their own independent legal counsel.
HOLDING
The Court holds that any registered member of the Cherokee Nation may obtain a listing of registered Cherokee voters who voted in prior elections. The Service and/or Commission is/are ordered to make this information available to all registered members of the tribe, including Lay herein, within ten (10) days of the date of this Order.
Accordingly, Lay is entitled to receive the information requested in this action. It should be made clear that the effect of this ruling is applicable to all candidates for Cherokee public office, and all registered members of the Cherokee Nation who seek the same information which was sought by Lay in the lawsuit. The playing field must be level for all candidates in *36 this regal'd. With this ruling, any insider’s advantage, real or imagined, by an incumbent candidate or the candidate who is allied with an incumbent and/or one who is otherwise an “insider,” is removed.
The cost or charges for the information to be released to Lay shall be the same as that for the Qualified Voter List, as previously noted. However, the Council retains the power to make any reasonable adjustments to such charges as it deems necessary. Until such time as any statutory charges are enacted, if any at all are made, the cost of such information shall be provided herein.

. The language of the Stipulation is as follows: The parties hereby stipulate and agree that all previously named defendants will be and are hereby dismissed front this action upon the substitution of the Cherokee Nation as party defendant. It is further agreed that the Cherokee Nation will not attempt to raise its sovereign immunity in these proceedings. The parties further acknowledge that should plaintiff prevail herein that it may or may not be necessary for this court to enter certain orders directing any or all of them to carry out the judgment herein. Signed by: Jim Wilcox-en, Attorney for the Plaintiff; Donald Hopkins, Attorney for Defendant, Margaret Riney, and, Linda Donelson, Attorney for all remaining Defendants, Approved by Justice Ralph F. Keen, Judicial Appeals Tribunal. Filed November 24th, 1998.

. Legislative Act No 7-97, Section One, codified as 26 CNCA Section One.

. It should be noted that Service (created by Legislative Act No. 7-97, Section 14; codified as 26 CNCA Section 14) is a separate entity from the Commission. The Administrator of Service is hired by the Commission and is under the direct supervision of the Commission at all times while the Commission is in existence. When the Commission is not in existence, the Administrator is under direct supervision of the Council Rules Committee.

. Legislative Act No. 7-97, Section 11; codified as 26 CNCA Section 11.

. Legislative Act No. 7-97, Section 23; codified as 26 CNCA Section 23.

. Legislative Act No. 7-97, Section 22(C); codified as 26 CNCA Section 22(C).

. Id.

. Legislative Act No. 7-97, Section 24(A); codified as 26 CNCA Section 24(A). It should be noted that this Section may, at first, appear to be in conflict with Section 23(D) of the Act which provides Each list [Qualified Voters List and Inactive Voters List] as it existed as of a specific election date shall be maintained by the Election Services Office for at least one year following December 31 of the year in which the specific election occurred. First, Section 23(D) does not require destruction of old lists. Second, the base voter information, and voter history MUST be maintained for the Service to be incompliance with Section 24. Third, Section 23(D) simply gives recognition that the lists are subject to change with new registrations, deaths, etc. TO BE IN COMPLIANCE WITH SECTION 24, THE OLD INFORMATION MAY NOT BE DESTROYED DURING THE TIME PERIOD REQUIRED FOR ITS USE UNDER SECTION 24, WHICH COULD BE IN EXCESS OF EIGHT (8) YEARS.

. Section 25. Obtaining a List; Duplication of List. A. Purchase of List by Candidates. Each certified candidate for an elective office of the Cherokee nation may purchase a copy of the Qualified Voter List in mailing label format using one of the following methods: on computer diskette, on gummed labels or on plain paper, provided that candidates for Council seats may purchase only that portion of the list containing names of voters within the district in which he or she is seeking office. Candidates may order the list at any time after filing for office. Candidates who purchase the Qualified Voter List shall receive two versions of the list. The complete voters list shall be provided no later than ten working days after the voter registration deadline for voting in the election, and an additional updated list with absentee voters noted shall be provided by the third Friday in April of the election year. There shall be a one time charge of $200 for individual district lists and a one time charge of $500 for the nine district lists, which shall be paid prior to receipt of the first list, provided that there shall be an additional charge for each order for a list on preprinted gummed labels at a cost to be determined by the Election Commission, based on cost of labels and labor related to preparation of the labels. B. Public Access to List. Effective March 1, 1998, any registered member of the Cherokee Nation may purchase the Qualified Voter List in paper printout format. There shall be a charge of $100 per printout of the list sold. The list shall be updated only up until the date of the request for the list, and shall be provided in a timely manner, no later than ten working days after the date of the request. The list shall also be available at the Election Services Office for inspection by any registered member of the Cherokee Nation at no charge, in its most recently updated and printed form at the time of the request for inspection. C. Use of Lists. Lists purchased by candidates who have filed for office during an election year shall be used only for campaign purposes of the candidate who purchased the list. Lists purchased by other persons shall use the list only for campaign purposes related to elective offices, constitutional referendum, the power of the initiative and the power of referendum. Each candidate or other person who purchases a list is responsible for ensuring that no campaign, and for ensuring that his or her campaign workers prevent such access. It shall be a criminal violation for any person to use or release a list for commercial purposes, and any person convicted of said criminal violation shall be subject to up to a $2,000 fine and/or up to ninety days in jail.

. Section 25 of the Act is troublesome for several reasons. For example, it can be argued that Section 25 of the Act creates two classes of citizens: candidates for Cherokee public office and all other registered members of the Cherokee Nation. A Candidate can purchase a copy of the Qualified Voter List on computer diskette, on gummed labels, or on plain paper. The cost for the Cherokee candidate is $200 for an individual district list or $500 for a nine district list. On the other hand, the non-candidate registered Cherokee can purchase a “paper printout format” of the list (no diskette or gummed labels mentioned), presumably of all nine districts, for $100. Among other potential problems, it appears that an argument could be made that Section 25 violates the Equal Protection provision of the Indian Civil Rights Act of 1968 which Act has been incorporated into Cherokee law through Article II of the Cherokee Constitution. It should be noted, however, that an effort to partially resolve the problem has been made by the adoption of a "policy” of the Election Services Office. In Defendant’s brief it is state; "... the Tribal Election Service itself has set a policy wherein any person, including council members, may bring a computer and a scanner to the Election Services Office and make a copy of voter records at no cost.”
In order to eliminate any doubt or ambiguity regarding the interpretation of Section 25, it must be construed as follows:
1. Any Cherokee citizen, candidate or non-candidate, can purchase a paper print *33 out formant of the Qualified Voter List for any or all Council district for a cost not to exceed $100.00. As provided in the statute, there will be no updates to this list.
2.Any Cherokee citizen, candidate or non-candidate, can purchase a copy of the Qualified Voter List on computer dist, or gummed labels, for an individual Council district, for a cost not to exceed $200,00, subject t additional charges as provided for in the statute. This list will be updated as provided in the statute.
3. Any Cherokee citizen, candidate or non-candidate, can purchase a copy of the Qualified Voter List on computer disk, or gummed labels, for all Council district, for a cost not to exceed $500.00, subject to additional charges as provided for in the statute. This list will be updated as provided in the statute.
4. Any Cherokee citizen, candidate or non-candidate is entitled to a so called free look, and may bring a computer and scanner to make a copy of non-privileged voter records at no cost.

. Defendant attached, as part of its brief, a copy of the Act on which the vote tally of the members of the Council is shown. It should be noted that the vote concerned the ENTIRE Act and was not taken on a line by line, or section by section basis. In other words, the vote on the Act shown in Defendant’s brief, was “all or none”.

. 26 CNCA Section 11(D)(3) [LA No. 7-97J.

. Unfortunately, the term “general election year” is not defined in the Act, nor are many other important terms used in the Act. Fortunately, for the purposes of example given here by the Court, the meaning of the term is immaterial.

.26 CNCA Section 11 [LA No. 7-97],